# AGREEMENT

This Agreement (this "Agreement") dated as of March 18, 2025 (the "Execution Date"), is made by and between **JOHN PATRICK LOWE** as the chapter 7 trustee of Animo Bancorp, Inc. (the "Trustee") and **GLORIFI ACQUISITIONS, LLC** ("Agent"), who collectively are referred to herein as the "Parties" or in the singular case as a "Party).

## RECITALS

**WHEREAS**, on January 4, 2023, an involuntary petition for relief under chapter 7 of Title 11 of the United States Code, 11 U.S.C. §§ 101, et seq. (the "Bankruptcy Code") was filed against Animo Services LLC ("Service") in the United States Bankruptcy Court for the Northern District of Texas, Dallas Division (the "NDTX Bankruptcy Court"), thereby initiating the bankruptcy case styled *In re Animo Services LLC*, Case No. 23-30035-mvl7 (the "Services Bankruptcy Case" and the estate thereof being referred to as "Services Estate"), and on February 9, 2023, an order for relief under chapter 7 of the Bankruptcy Code was entered against Services;

**WHEREAS**, on February 8, 2023, With Purpose, Inc. ("WPI Debtor") filed a voluntary petition for relief under chapter 7 of the Bankruptcy Code in the NDTX Bankruptcy Court, thereby initiating the bankruptcy case styled *In re With Purpose, Inc.*, Case No. 23-30246-mvl7 (the "WPI Bankruptcy Case" and the estate thereof being referred to as "WPI Estate");

**WHEREAS**, on March 5, 2024 (the "Petition Date"), a voluntary petition for relief under chapter 7 of the Bankruptcy Code was filed by Animo Bancorp, Inc. ("Bancorp" or "Debtor") in the United States Bankruptcy Court for the Western District of Texas, San Antonio Division (the "Bankruptcy Court"), thereby initiating the bankruptcy case styled *In re Animo Bancorp*, Inc., Case No. 24-50359-cag (the "Bankruptcy Case" and the estate thereof being referred to as "Estate");

**WHEREAS**, Services, WPI and Bancorp were operated under common control;

**WHEREAS**, the Services Estate, the WPI Estate and the Estate each have causes of action arising out of a common set of facts;

**WHEREAS**, on January 24, 2025, the NDTX Bankruptcy Court approved an agreement between Agent and the trustee for the WPI Estate in the WPI Bankruptcy Case providing for the Agent to prosecute and manage causes of action of the WPI Estate in accordance with the terms and conditions of such agreement (the "WPI Agreement") [Case No. 23-30246, Docket No. 399];

**WHEREAS**, on February 6, 2025, the NDTX Bankruptcy Court approved an agreement between Agent and the trustee for the Services Estate in the Services Bankruptcy Case providing for the Agent to prosecute and manage causes of action of the Services Estate in accordance with the terms and conditions of such agreement (the "Services Agreement") [Case No. 23-30035, Docket No. 94];

**WHEREAS**, Agent and Trustee believe there is merit to entering into an agreement for the Estate in the Bancorp Bankruptcy Case that is similar in nature to the WPI Agreement and the Services Agreement; and

**WHEREAS**, the Parties have determined that the terms of this Agreement are fair, reasonable, and adequate, and is in the best interest of the Parties and both Estates.

**NOW, THEREFORE**, in consideration of the foregoing recitals, and the terms, agreements, representation, and covenants set forth herein, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties, intending to be legally bound, agree as follows:

**AGREEMENT**

**CONDITIONS PRECEDENT**

1. Recitals. The recitals and prefatory phrases and paragraphs set forth above are incorporated in full and made part of this Agreement.

2. Effective Date. Unless otherwise stated, the obligations, representations and warranties stated in this Agreement shall become effective on the date upon which all of the following conditions precedent have occurred (the "Effective Date"):

(a) the Bankruptcy Court has entered an order in the Debtor's Bankruptcy Case, in a form reasonably acceptable to the Parties, approving this Agreement and making findings of fact and conclusions of law to the extent required to give effect to this Agreement and such order has not been stayed, modified, or amended (the "Approval Order"), substantially in the form attached hereto as Exhibit A; and

(b) the Trustee and the Agent shall have executed a Joint Prosecution Agreement substantially in the form attached hereto as Exhibit B (the "JPA").

3. Appeals. In the event the Approval Order is stayed pending appeal, the Agent shall be under no obligation to fund the Payment. The Trustee and Agent shall work cooperatively to respond to and oppose any appeal.

4. Bankruptcy Court Approval. The Trustee shall file all appropriate motions, notices and proposed orders seeking Bankruptcy Court approval of this Agreement and entry of the Approval Order, subject to the Agent's approval as to form, such approval not to be unreasonably withheld.

5. Non-Approval. In the event the Agreement is not approved by the Bankruptcy Court on or before April 30, 2025, unless agreed to by the Parties: (a) nothing herein shall be deemed a representation or admission by any Party as to any issue, (b) this Agreement will be deemed null and void, including the validity of any and all instruments executed by any of the Parties for its performance and implementation prior to its approval and the Effective Date, and (c) the Parties shall be returned to the status quo each Party held prior to entry into this Agreement.

6. Non-Occurrence of the Effective Date. In the event the Approval Order has been entered, but the Effective Date shall have not occurred, then any Party may seek to enforce rights and obligations under this Agreement by seeking relief from the Bankruptcy Court, including relief for specific performance of other Parties' obligations hereunder. If the Effective Date shall not have occurred by May 10, 2025, this Agreement shall be null and void unless otherwise extended in writing by the Parties.

7. Approval Order. Waiver of the fourteen-day stay shall be requested, and the Approval Order shall provide for the protections provided for in 11 U.S.C. §§ 363(m) and (n) and 364(e).

## DEFINITIONS

8. "Agent Expenses" are defined herein.

9. "Allowed Claims" means any of the seven (7) proofs of claim filed in the Bankruptcy Case prior to the Execution Date of this Agreement that are legitimate and valid claims, after any objections have been heard and resolved.

10. "Causes of Action" means any (a) claims, interests, damages, remedies, causes of action, demands, rights, actions, suits, obligations, liabilities, accounts, defenses, offsets, powers, privileges, licenses, and franchises of any kind or character whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, contingent or non-contingent, matured or unmatured, suspected or unsuspected, in tort, law, or equity, (b) all rights of setoff, counterclaim, or recoupment and claims on contracts or for breaches of duties imposed by law (c) claims pursuant to sections 362, 510, 542, 543, 544 through 550, or 553 of the Bankruptcy Code; and (d) such claims and defenses as fraud, mistake, duress, and usury and any other defenses set forth in section 558 of the Bankruptcy Code.

11. "Estate Causes of Action" means Causes of Action owned by the Estate; provided, however, that Estate Causes of Action excludes any and all causes of action the Estate or the Trustee may hold against Field Manning Stone Aycock, PC.

12. "Gross Negligence" means a final determination by the Bankruptcy Court that the party has engaged in intentional wrongdoing or a knowing extreme departure from the care a reasonable person would exercise in similar circumstances.

13. "Special Counsel Fees" are defined herein.

14. "Net Proceeds" shall mean: the proceeds obtained from the Estate Causes of Action.

## PAYMENT

15. Payment. The Agent shall provide to the Estate $20,000 cash pursuant to 11 U.S.C. § 363, and the Trustee shall sell, and the Agent shall purchase, free and clear of any and all liens, claims, interests and encumbrances of any kind or type, the Debtor's and Estate's rights given to Agent hereunder and under the JPA, which amount shall constitute free and clear cash,

free of all liens, claims, interests and encumbrances of any kind or type (the "Payment"). The purchase shall be memorialized in one or more separate agreements and assignments as are satisfactory to the Trustee and the Agent.

16. Deposit. Within two (2) business days of the filing by the Trustee of a motion for approval of this Agreement, the Agent shall deposit the sum of $5,000 to be held in the Trustee's trust account as a credit to the Payment, and will be paid to the Trustee if the Agreement closes or Agent fails to close pursuant to the terms of the Agreement following entry of the Approval Order, or returned to Agent if this Agreement does not close for any other reason.

**PROSECUTION OF CAUSES OF ACTION**

17. Agent Sole Authority. Subject only to the Major Decisions described below, Agent shall have sole authority to prosecute, not prosecute, negotiate, settle or otherwise dispose or not dispose of the Estate Causes of Action. No other party shall be entitled to assert any Estate Causes of Action, as such sole authority over Estate Causes of Action is vested in the Agent.

18. Claim Investigation. The Agent shall have sole authority to retain professionals to investigate the merits of asserting Estate Causes of Action. Agent shall be responsible for the fees, costs and expenses of any such investigation, and any such amounts shall be included in "Agent Expenses" as defined below.

19. Joint Prosecution Agreement. The Agent and the Trustee shall enter into the JPA substantially in the form attached hereto as Exhibit B. The JPA shall vest any and all discretion and authority to prosecute the Estate Causes of Action in the Agent; *provided, however*, that any settlement of an Estate Causes of Action shall be subject to Bankruptcy Court approval. For the avoidance of doubt, the Trustee acknowledges that the Agent shall be empowered and entitled to bring suit for Estate Causes of Action in the name of and on behalf of Trustee and shall be further empowered to add the Trustee as a party to existing litigation or substitute the Trustee as a party to existing litigation. In the event the Agent is grossly negligent in the prosecution of Estate Causes of Action, the Trustee may seek relief from the Bankruptcy Court from this provision and the JPA. Major Decisions require the Trustee's approval, which approval shall not be unreasonably withheld. "Major Decisions" are limited to non-suiting, dismissing, or settling Estate Causes of Action, and the Agent shall at all times reasonably and timely consult with the Trustee with respect to material decisions regarding whether to prosecute Estate causes of action, not to prosecute them, negotiations regarding the same, and all issues related to potentially settling, abandoning, or otherwise disposing of Estate causes of action.

20. Notice and Indemnification. The Trustee and his counsel shall be kept apprised of all litigation of Estate Causes of Action and are entitled to advise, but not direct, the Agent's prosecution of any Estate Causes of Action. The Agent agrees to indemnify the Trustee and his counsel in the event any sanctions are entered against the same as a result of the Agent's actions, inactions, omissions, and the like in the prosecution of any litigation controlled by the Agent.

21. Special Litigation Counsel; Other Estate Professionals. The Trustee shall timely file one or more applications (the "Employment App") in the Bankruptcy Court to employ special litigation counsel ("Special Counsel") to pursue the Estate Causes of Action, such Special

Counsel selected by Agent. The Trustee shall employ further other professionals to provide services to the Estate as may be reasonably requested by the Agent or Special Counsel, as selected by the Agent, and all fees and expenses of such other professionals shall be paid in full by the Agent and included in "Agent Expenses" as defined below.

22. Privileges. The Parties agree to share work product, attorney/client and other privileges in furtherance of the JPA and the prosecution and defense of the matters currently pending or to be filed in the Bankruptcy Court, and with respect to related matters raised in any other jurisdiction, venue or proceeding.

**SHARING OF NET PROCEEDS**

23. Sharing of Net Proceeds. In exchange for the consideration set forth in this Agreement, the Agent and the Trustee agree to the sharing of Net Proceeds in accordance with the table below, after first accounting for any paying any fees owed to Special Counsel.

| NET PROCEEDS | AGENT | ESTATE |
|---|---|---|
| Up to Preferred Recovery | 100% | 0% |
| First $200,000 above Preferred Recovery | 30% | 70% |
| Next $200,000 | 40% | 60% |
| Next $500,000 | 50% | 50% |
| Next $500,000 | 60% | 40% |
| Any further Net Proceeds until Estate receives funds sufficient to pay all Allowed Claims in full | 80% | 20% |
| Any Net Proceeds above and beyond those necessary to pay all Allowed Claims in full | 100% | 0% |

24. Preferred Recovery. The Agent will receive a preferred recovery in the amount of (i) $20,000, plus (ii) advanced Special Counsel Fees, plus (iii) incurred Agent Expenses, plus (iv) 1% per month return on the outstanding balance of (i) through (iii), compounded monthly (collectively, the "Preferred Recovery").

25. Litigation Fee and Expenses. Fees, costs and expenses incurred by Special Counsel in pursuit of the litigation pursuant to the JPA shall be paid from Net Proceeds ("Special Counsel Fees"). Agent is permitted to advance Special Counsel Fees, and any such amounts advanced by Agent shall be reimbursed to Agent from the Net Proceeds. The Agent is not responsible for any fees and expenses incurred by the Trustee, which fees and expenses shall be paid by the Estate.

26. Agent Expenses. Fees, costs and expenses incurred by Agent with respect to the pursuit of the litigation pursuant to the JPA and the Bankruptcy Case shall be paid from Net Proceeds ("Agent Expenses").

27. Security Interests, Perfection and Priority. The obligations owing to Agent hereinunder shall be secured by first priority lien and security interest in all of the Net Proceeds. Such liens and security interests shall be deemed unavoidable, fully and properly perfected by this Agreement and the Approval Order. Following the sharing of Net Proceeds hereunder, the Estate's share of Net Proceeds will be deemed property of the Estate free and clear of any and all liens, claims and encumbrances.

28. Funds Received by Trustee on or Before the Effective Date. Any proceeds received by the Estate on or before the Effective Date from settlement with Field Manning Stone Aycock, PC, are excluded from this Agreement.

## CLAIM OBJECTIONS

29. Claim Objections. Pursuant to the JPA, the Agent or Trustee can object to claims, individually, jointly or cooperatively. The Agent may unilaterally assert, file and prosecute claim objections and is authorized to do so without further order of the Court.

## BREACH

30. Either Party may seek appropriate relief from the Bankruptcy Court upon a material breach of this Agreement or the JPA by the other Party.

## MISCELLANEOUS TERMS

31. Entire Understanding. This Agreement has been prepared after negotiations among the Parties and contains the entire understanding and agreement among the Parties with respect to the Estate Causes of Action, and any and all claims that have arisen or which could have arisen in connection with the Estate Causes of Action. No other representations, covenants, undertakings, or other prior or contemporaneous agreements, whether verbal or written, which are not specifically incorporated in this Agreement, shall be deemed in any way to exist or bind the Parties. The Parties acknowledge that no Party has executed this Agreement in reliance on any promise, representation, or warranty not expressly contained in this Agreement.

32. No Assumed Liabilities. Notwithstanding anything to the contrary set forth herein, the Parties expressly acknowledge and agree that Agent will not assume, be obligated to pay, perform or otherwise discharge or in any other manner be liable or responsible for liabilities of the Debtor or Estate, whether existing on date of the Approval order or arising thereafter, including on the basis of any law imposing successor liability, other than as expressly assumed hereunder and the obligations of Agent under this Agreement.

33. Attorneys' Fees and Costs. Unless otherwise provided in this Agreement, the Parties shall bear their own costs and attorneys' fees incurred in connection with the negotiation and consummation of this Agreement. Notwithstanding the foregoing, if any Party is required to enforce its rights under this Agreement, then the prevailing Party of any such action shall be entitled to its reasonable attorneys' fees and costs from the non-prevailing Party.

34. Capacity. By execution below, consistent with this Agreement, each Party agrees and affirmatively represents that it has the full capacity and authority to execute, perform, and be bound by each and every term of this Agreement.

35. Related Claims. If any action, claim or similar proceeding is filed or commenced in any court or tribunal asserting Estate Causes of Action or seeking relief in contravention of this Agreement, the Parties shall cooperate in opposing such relief, and to seek dismissal, stay or withdrawal of such matter, including seeking relief from the Bankruptcy Court.

36. Rescission of Entire Agreement. In the event that the Bankruptcy Court declares the Agreement, or any material provision of the Agreement, invalid or unenforceable, the entire Agreement will be deemed rescinded and void ab initio.

37. Ownership of Claims. The Trustee acknowledges by virtue of signing this Agreement that the Trustee is the lawful owner of all rights, title, and interest in and to the Estate Causes of Action, and that it has not heretofore assigned or transferred, or purported to assign or transfer, any of such claims, in whole or in part, to any other person or entity, and that it has the authority to enter into this Agreement and to bind each Party to its terms, subject to approval of the Bankruptcy Court.

38. Insurance. Any obligation of any insurer to pay any defense costs is not a condition to the effectiveness of this Agreement, and the insurer's failure to pay any defense costs shall not affect the force and validity of this Agreement, or any obligation of any insurer.

39. Notice to Parties. Unless otherwise agreed to in writing, all notices or communications under this Agreement by any Party to the other Party shall be in writing, sent via email, and mailed by certified mail, return-receipt requested, or by overnight courier with a parcel tracking system, to counsel for the Parties. Notices shall be deemed to have been given as of the date sent. Notice shall be sent as follows:

| | |
|---|---|
| To Trustee: | John Patrick Lowe, Trustee<br>2402 East Main Street<br>Uvalde, TX 78801<br>pat.lowe.law@gmail.com |
| With copies, which shall not constitute notice, to: | Brian Talbot Cumings<br>Graves Dougherty Hearon & Moody, PC<br>401 Congress Ave #2700<br>Austin, TX 78701<br>Email: bcumings@gdhm.com |
| To GloriFi Acquisitions, LLC: | Glorifi Acquisitions, LLC<br>2655 Northwinds Parkway<br>Alpharetta, Georgia 30009<br>Attn: Richard L. Jackson<br>Email: rlj@jacksonhealthcare.com |

| | |
|---|---|
| With copies, which shall not constitute notice, to: | Kilpatrick Townsend & Stockton LLP<br>Attn: Paul M. Rosenblatt<br>1100 Peachtree Street NE<br>Suite 2800<br>Atlanta, GA 30309-4528<br>Email: PRosenblatt@ktslaw.com |

40. Execution in Counterparts. The Parties may execute this Agreement in counterpart originals in any number of actual, faxed, telecopied and/or PDF scanned counterparts. Each executed counterpart will be considered an original, and all of them together will constitute a singular Agreement. No counterpart shall be altered or interlined and all of them together shall constitute but one and the same instrument.

41. Governing Law. This Agreement will be interpreted and construed under the laws of the State of Texas, the Bankruptcy Code and Bankruptcy Rules, regardless of the domicile of any Party or conflict of laws principles, and will be deemed for such purposes to have been made, executed, and performed in the State of Texas.

42. Construction. This Agreement shall be construed as if the Parties jointly participated in the preparation of this Agreement and any uncertainty and/or ambiguity shall not be interpreted against any one Party.

43. Headings. The section titles, captions, and headings contained in this Agreement are inserted as a matter of convenience and for reference, and shall in no way be construed to define, limit, or extend the scope of this Agreement or the effect of any of its provisions.

44. Jurisdiction and Venue. The Bankruptcy Court shall retain jurisdiction to enforce the terms of this Agreement. Venue relating to this Agreement shall be proper in the Bankruptcy Court for the Northern District of Texas.

45. No Admission of Liability. Nothing in this Agreement shall be construed as an admission of liability or any agreement to subject a Party to the personal jurisdiction of any particular court, except and solely to the extent necessary to enforce or interpret this Agreement.

46. Binding on Successors, Assigns, and Others. This Agreement and the covenants and conditions it contains shall be jointly and severally binding upon the Parties and their respective heirs, executors, administrators, conservators, plan administrators, agents, trustees, servants, employees, committees, beneficiaries, predecessors, successors (including any successor chapter 7 trustee), attorneys, insurers, transferees, and assigns.

47. Amendments and Waivers. Any amendment to this Agreement shall be in writing and shall conform to the same formalities as exhibited in this Agreement. No failure to exercise, nor delay in exercising, any right, remedy or power under this Agreement shall operate as a waiver thereof, nor shall any single or partial exercise of any right, remedy or power under this Agreement preclude any other or further exercise thereof, or the exercise of any other right, remedy or power provided herein or by law or in equity.

48. Further Assurances. Each of the Parties agrees to execute such other documents and to take such other action as may be reasonably necessary to further the purposes of this Agreement.

IN WITNESS WHEREOF, the Parties have caused this Agreement to be executed as of the Execution Date, and it shall be effective on the Effective Date.

JOHN PATRICK LOWE,
AS CHAPTER 7 TRUSTEE
OF ANIMO BANCORP, INC.

By: ____________________
Name: John Patrick Lowe
Title: Trustee

GLORIFI ACQUISITIONS, LLC

By: ____________________
Name: Richard L. Jackson
Title: CEO

48. Further Assurances. Each of the Parties agrees to execute such other documents and to take such other action as may be reasonably necessary to further the purposes of this Agreement.

IN WITNESS WHEREOF, the Parties have caused this Agreement to be executed as of the Execution Date, and it shall be effective on the Effective Date.

JOHN PATRICK LOWE,
AS CHAPTER 7 TRUSTEE
OF ANIMO BANCORP, INC.

By: ____________________
Name: John Patrick Lowe
Title: Trustee

GLORIFI ACQUISITIONS, LLC

By: ____________________
Name: Richard L. Jackson
Title: CEO

**EXHIBIT A**

**FORM OF APPROVAL ORDER**

**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| **In Re:** | § | |
| | § | **Case No. 24-50359-cag** |
| **ANIMO BANCORP, INC.,** | § | |
| | § | |
| | § | **Chapter 7** |
| **Debtor.** | § | |

**ORDER ON MOTION TO APPROVE SALE OF ASSETS AND FOR APPROVAL OF LITIGATION SHARING ARRANGEMENT**

ON THIS DAY, the Court considered the *Motion to Approve Sale of Assets and for Approval of Litigation Sharing Arrangement* [Dkt. No.___] (the "Motion"),[1] and the Court, being of the opinion that the Motion is well taken, and service was proper, will hereby GRANT and APPROVE the same.

**IT IS, THEREFORE, ORDERED**, that the Agreement is APPROVED and that it shall govern according to its terms, and that the Trustee is authorized and directed to immediately

[1] Capitalized terms not defined herein have the meaning given them in the Motion.

execute and deliver the Agreement and all related documents, and thereafter, is authorized without need for further order to implement, effective, and perform under the Agreement.

**IT IS, FURTHERMORE, ORDERED,** that the Agreement shall be effective only upon the payment of the $20,000.00 consideration under the Agreement to the Trustee.

**IT IS, FURTHERMORE, ORDERED**, that, as set forth in the Agreement, GloriFi shall at all times reasonably and timely consult with the Trustee with respect to material decisions, that are otherwise GloriFi's decisions under the Agreement, regarding whether to prosecute Estate Causes of Action, not to prosecute them, negotiations regarding the same, and all issues related to potentially settling, abandoning, or otherwise disposing of the Causes of Action.

**IT IS, FURTHERMORE, ORDERED** that GloriFi shall have all authority and agency over the Causes of Action as provided in the Agreement, and may appear and be heard in any court, and prosecute any Causes of Action, for and in the name of the Estate, subject to the Joint Prosecution Agreement, the Agreement, and all provisions of this Order applicable to the same.

**IT IS, FURTHERMORE, ORDERED**, that the $20,000.00 payment to the Trustee under the Agreement shall be free and clear, unencumbered funds and property of the Estate.

**IT IS, FURTHERMORE, ORDERED,** that the sale of the Estate's rights related to the Causes of Action, shall, pursuant to 11 U.S.C. §§ 363(b) and (f), be free and clear of all liens, claims, interests, and encumbrances of any kind or type, and the Trustee is authorized and directed to execute and deliver to GloriFi such documents and instruments as may be prepared by GloriFi and may be reasonably necessary or advisable to evidence such sale, and that liens, claims, interests, or encumbrances, if any, shall attach to the $20,000.00.

**IT IS, FURTHERMORE, ORDERED,** that the foregoing sale of property of the Estate shall be without warranty and on an "as is, where is" basis.

**IT IS, FURTHERMORE, ORDERED,** that effective as of the closing date for the Agreement, the sale and assignment of the rights related to the Causes of Action to GloriFi shall constitute a legal, valid, and effective transfer, and will vest GloriFi with all right, title, and interest of the Debtor's Estate in transferred rights to the Causes of Action, free and clear of all liens, claims, interests, and encumbrances of any kind or type pursuant to 11 U.S.C. §§ 363(b) and (f).

**IT IS, FURTHERMORE, ORDERED,** that any proceeds or recoveries that may be collected by GloriFi, including with respect to the payment of any Special Counsel's fees or expenses, shall be property of the Estate, subject to the rights of GloriFi thereto, and GloriFi shall account to the Trustee and the Estate for all such proceeds or recoveries.

**IT IS, FURTHERMORE, ORDERED,** that the Preference to be paid to GloriFi, is fair and reasonable, and is APPROVED without need for further application or order.

**IT IS, FURTHERMORE, ORDERED,** that, with respect to the expenses of GloriFi, the Court shall retain exclusive jurisdiction to determine any disputes regarding the same, and that any of the Trustee or GloriFi may seek one or more orders from this Court determining the same.

**IT IS, FURTHERMORE, ORDERED,** that, for purposes of investigation, prosecution, and potential recovery of the Causes of Action under the Agreement, the Trustee and GloriFi shall share attorney-client and attorney work-product privileges with the Special Counsel.

**IT IS, FURTHERMORE, ORDERED,** that GloriFi is not a successor to, alter ego of, or continuation of the Debtor under any theory of law or equity.

**IT IS, FURTHERMORE, ORDERED,** that GloriFi is not assuming, nor be deemed to have assumed, any liability or obligations of the Debtor or its Estate.

**IT IS, FURTHERMORE, ORDERED,** that GloriFi is a good-faith purchaser within the meaning of 11 U.S.C. § 363(m) and is entitled to the protection afforded thereby, and neither the

Trustee nor GloriFi have engaged in any conduct that would cause or permit the Agreement or any of the transactions contemplated thereby to be avoided or subject to monetary damages under 11 U.S.C. § 363(n), or that would prevent the application of 11 U.S.C. §§ 363(m) or 364(e).

**IT IS, FURTHERMORE, ORDERED** this Order is a final order and the fourteen-day stay provided in Fed. R. Bankr. P. 6004(h) or any other provisions staying this Order does not apply to this Order and the Trustee may close the sale immediately upon entry of this Order.

**IT IS, FURTHERMORE, ORDERED,** that this Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

# # #

*Order Prepared by Counsel for Ch. 7 Trustee*

Brian T. Cumings
SBN 24082882
Graves Dougherty Hearon & Moody, P.C.
401 Congress Ave., Suite 2700
Austin, Texas 78701
512.480.5626
512.536.9926 (Fax)
Email: bcumings@gdhm.com

# EXHIBIT B

## JOINT PROSECUTION AGREEMENT

# JOINT PROSECUTION AGREEMENT

This JOINT PROSECUTION AGREEMENT (this "Joint Prosecution Agreement"), dated as of March [•], 2025, is made between John Patrick Lowe, as the chapter 7 trustee of Animo Bancorp, Inc., a Texas corporation (the "Trustee"), and GloriFi Acquisitions, LLC, a Georgia Limited Liability Company (the "Agent").

## RECITALS

A. WHEREAS, the Trustee and Agent have entered into that certain Agreement, executed as of March 18, 2025 (the "Agreement"), pursuant to which the Trustee and Agent have agreed to enter into this Joint Prosecution Agreement to prosecute the Estate Causes of Action. Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Agreement.

B. WHEREAS, the Agreement contemplates that prior to the Effective Date of the Agreement, the Trustee and Agent will enter into this Joint Prosecution Agreement to, among other things, pursue the Estate Causes of Action on behalf of and in the name of the Trustee and the Estate.

C. WHEREAS, the Agreement further contemplates that this Joint Prosecution Agreement shall provide for and account for costs incurred in the prosecution of the Estate Causes of Action borne by the Estate; and

THEREFORE, in consideration of the foregoing and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

## AGREEMENT

1. The foregoing recitals are incorporated herein as if fully set forth herein.

2. This Joint Prosecution Agreement shall be effective on the Effective Date and shall have no force or effect whatsoever before the Effective Date.

3. The Trustee hereby appoints the Agent as the exclusive agent of the Trustee to investigate, commence, prosecute, manage public relations, settle, and liquidate each of the Estate Causes of Action, in each case, in the name of the Trustee; *provided, however*, that any settlements shall be subject to Bankruptcy Court approval pursuant to Bankruptcy Rule 9019 and any applicable Local Rule. Major Decisions require the Trustee's approval, which approval shall not be unreasonably withheld. Major Decisions are limited to non-suiting, dismissing, or settling Estate Causes of Action, and the Agent shall at all times reasonably and timely consult with the Trustee with respect to material decisions regarding whether to prosecute Estate causes of action,

not to prosecute them, negotiations regarding the same, and all issues related to potentially settling, abandoning, or otherwise disposing of Estate causes of action.

4. Subject to the limitations of paragraph 3, the Agent is authorized to investigate, commence, prosecute, settle, and liquidate the Estate Causes of Action, or any portion thereof, in the sole discretion of Agent without further approval from Trustee or the Court, except as explicitly set forth in the Approval Order or the Agreement.

5. For the avoidance of doubt, nothing contained in this Joint Prosecution Agreement shall be construed to obligate the Agent to investigate, commence, prosecute settle, or liquidate any one of the Estate Causes of Action.

6. All proceeds derived from the investigation, commencement, prosecution, settlement, or liquidation of each of the Estate Causes of Action shall be payable and divided between the Estate and the Agent and paid consistent with the terms of the Agreement and Approval Order.

7. This Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective successors and assigns; *provided, however*, that neither party hereto shall be permitted to assign its interest in this Joint Prosecution Agreement without the prior written consent of the other party.

8. This Agreement shall be governed by, and construed in accordance with, the internal laws of the State of Texas, without regard to the laws of any other jurisdiction that might be applied because of the conflicts of laws principles of the State of Texas.

9. This Agreement may be executed in counterparts, each of which shall be deemed an original and all of which, when taken together, shall constitute one and the same instrument.

*[The remainder of this page has been intentionally left blank.]*

IN WITNESS WHEREOF, the parties have executed this Joint Prosecution Agreement as of the date first written above.

JOHN PATRICK LOWE,
AS CHAPTER 7 TRUSTEE
OF ANIMO BANCORP, INC.

By: ____________________
Name: John Patrick Lowe
Title: Trustee

GLORIFI ACQUISITIONS, LLC

By:__________________________
Name: Richard L. Jackson
Title: CEO