Trey Crawford
SBN 24059623
tcrawford@cwl.law
Michael J. Lang
SBN 24036944
mlang@cwl.law
Alexandra Ohlinger
SBN 24091423
aohlinger@cwl.law

Crawford Wishnew & Lang, PLLC
1700 Pacific Ave., Suite 2390
Dallas, Texas 75201
Telephone: (214) 817-4500

**COUNSEL FOR DEBTOR**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| **IN RE:** | § | |
| | § | Case No. 24-50359-cag |
| **ANIMO BANCORP, INC.,** | § | |
| | § | Chapter 7 |
| **DEBTOR.** | § | |

**MOTION TO CONVERT BANKRUPTCY CASE TO CHAPTER 11 PURSUANT TO SECTION 706(A) OF THE BANKRUPTCY CODE**

**This pleading requests relief that may be adverse to your interests.**

**If no timely response is filed within 21 days from the date of service, the relief requested herein may be granted without a hearing being held.**

**A timely filed response is necessary for a hearing to be held. Any response must be timely filed with the United States Bankruptcy Clerk, Western District of Texas, 615 E. Houston Street, Room 597, San Antonio, TX 78205. If a timely response is filed, the Court will then set a hearing on the Motion, and you will be provided with notice of the date, time, and place of the hearing. If you do not attend the hearing, the Court may decide that you do not oppose the Motion.**

**TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:**

Animo Bancorp, Inc., the debtor in the above-referenced case ( "*Debtor*"), files this Motion to Convert Bankruptcy Case to Chapter 11 Pursuant to Section 706(a) of the Bankruptcy Code (the "*Motion*"). The basis for the relief requested in the Motion is Section 706(a) of Title 11 of the United States Code (the "*Bankruptcy Code*"). In support thereof, Debtor would respectfully show the Court as follows:

## I.
## PRELIMINARY STATEMENT

1. By this Motion, Debtor seeks voluntary conversion of its bankruptcy case from Chapter 7 to Chapter 11 for the purpose of proposing a Chapter 11 plan of reorganization under which: (1) holders of allowed general unsecured claims will be offered a prompt cash distribution equal to ***one-hundred percent (100%)*** of their allowed claims; (2) all allowed administrative and priority claims will be paid in full as the Bankruptcy Code requires; and (3) Debtor's corporate existence as a financial services company will be preserved such that Debtor could maintain a go-forward business. The plan process will be fully funded by a $2,000,000 debtor-in-possession credit facility (the "*DIP Facility*"), described below.

2. The non-insider claims against Debtor filed in this case total **$1,276,933.07** against scheduled assets of $203.00. [Dkt. No. 1]. Under the plan Debtor is prepared to file promptly upon conversion (the "*Plan*"), creditors are offered a certain, prompt, litigation-free cash recovery of ***the full amount of their allowed claim***. Further, no creditor is asked to accept trust interests or other contingent consideration, and administrative expense will stop accruing against an estate that currently has no operating revenue with which to pay it.

3. At the time of this Motion, Debtor has committed funding adequate to make the distributions provided under the Plan. In addition, Debtor has a business reason to reorganize rather

than dissolve. Reorganization would allow Debtor to preserve its existing corporate platform as a financial services company, should its shareholders elect to pursue future business opportunities in financial services.

4. This is Debtor's first and only request for conversion. This case has never been converted between chapters. As set forth below, Debtor satisfies each element required for conversion under Section 706(a), and no cause exists under Section 1112(b) that would subject the converted case to immediate reconversion.

## II.
## JURISDICTION AND VENUE

5. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.

6. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

7. This Motion is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (O).

8. Debtor consents to the entry of final orders by this Court.

## III.
## BACKGROUND AND PROCEDURAL HISTORY

9. Debtor is a Texas financial services company formed on or about May 27, 2021. Its equity is held in equal parts by Toby Neugebauer ("*Neugebauer*") and Melissa Neugebauer (together, the "*Shareholders*"). Neugebauer serves as its sole director.

10. Among its business objectives, Debtor previously pursued the acquisition of Ganado Bancshares, Inc., the holding company of Citizens State Bank of Ganado, Texas (hereinafter, "*Ganado*"). The proposed acquisition of Gando required prior approval of the Board of Governors of the Federal Reserve System under the Bank Holding Company Act of 1956, 12 U.S.C. § 1842.

11. To capitalize the proposed acquisition, the Shareholders contributed $7,000,000 in cash to Debtor in October 2021, and the Neugebauer Family Trust ("*NFT*") committed an additional $28,000,000 in debt financing contingent upon Federal Reserve approval. Before receiving Federal

Reserve approval, Debtor was not supposed to incur any debt except for expenses related exclusively to the Federal Reserve application and purchase of Grando.

12. Federal Reserve approval was never obtained: Debtor's original application was rejected, and its subsequent application was never granted. The contingent debt financing by the NFT therefore never funded, and the acquisition of Gando was never consummated. Gando was ultimately acquired by another institution. With the failure of the corporate purpose that Debtor was originally formed to achieve, Debtor wound down its activities.

13. On November 30, 2022, Debtor made distributions to the Shareholders of $3,500,000 each, for a total of $7,000,000 (the "Distributions"), representing a return of the Shareholders' October 7, 2021 equity contribution to Debtor. Debtor's monthly financial statements immediately preceding the Distributions — as of October 31, 2022, prepared by Debtor's accounting team and consistent with Crowe LLP's unqualified audit opinion issued June 30, 2022 — reflected total assets of $9.006 million, total liabilities of $1.049 million, and shareholders' equity of $7.957 million, and carried no payable to The Capital Markets Company ("Capco"), Personetics Technologies, Inc., or Predictive Analytics Group. Debtor's accounting records classified each of those obligations as belonging to Animo Services, LLC ("ASL"), a subsidiary Debtor sold to With Purpose, Inc. in November 2021, rather than to Debtor. The Distributions are the subject of the Adversary Proceeding described in Paragraph 18 below, in which the Chapter 7 Trustee alleges the Distributions are avoidable — including on the basis that Capco was a Debtor creditor at the time. The Shareholders have answered and dispute those allegations.

14. On March 5, 2024 (the "*Petition Date*"), Debtor filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code, together with its schedules and statements. [Dkt. No. 1]. Debtor's schedules reflect total assets of $203.00 and total non-insider claims of **$1,276,993.07**,

comprising $536.74 in priority unsecured claims and $1,276,456.33 in nonpriority unsecured non-insider claims, with no secured claims. [Dkt. No. 1]. The four largest claims are those of: (1) insider Blackstone Investments I ($700,000.00), (2) The Capital Markets Company, LLC ($488,739.41); (3) Personetics Technology, Inc. ($466,340.00); and (4) Predictive Analytics Group, Inc. ($252,655.00). [Dkt. No. 1].

15. John Patrick Lowe was appointed interim Chapter 7 trustee on the Petition Date (the "*Trustee*") and currently serves as trustee of the estate. [Dkt. No. 2]. The meeting of creditors under Section 341(a) was held and concluded on April 10, 2024. [Dkt. No. 12]. The Court set June 3, 2024 as the deadline for proofs of claim. [Dkt. Nos. 4, 8].

16. On April 17, 2024, the Court approved the Trustee's retention of Graves Dougherty Hearon & Moody, P.C. as counsel for the estate under Section 327(a). [Dkt. Nos. 9, 15].

17. The estate has been administered in Chapter 7 for more than two years. During that time, the Trustee has, among other things, obtained approval of a compromise under Bankruptcy Rule 9019 [Dkt. No. 21] and moved to sell property of the estate under Section 363(f) [Dkt. No. 25], and two rounds of professional compensation have been allowed. [Dkt. Nos. 23, 31].

18. On March 2, 2026, the Trustee commenced the Adversary Proceeding No. 26-05011-cag, styled *John Patrick Lowe, Chapter 7 Trustee v. Toby Neugebauer and Melissa Neugebauer* (the "*Adversary Proceeding*"). In the Adversary Proceeding, the Trustee seeks to avoid and recover the Distributions under Sections 544, 548, and 550 of the Bankruptcy Code and the Texas Uniform Fraudulent Transfer Act and asserts related claims. [Adv. Dkt. No. 1]. The Shareholders, the defendants in the Adversary Proceeding, answered on April 1, 2026 [Adv. Dkt. No. 3], and a scheduling order was entered on April 7, 2026 [Adv. Dkt. No. 6]. The Adversary Proceeding is in

its early stages: initial disclosures were served April 21, 2026, and the parties recently obtained an extension of certain scheduling deadlines. [Adv. Dkt. Nos. 10, 11].

19. This bankruptcy case has never been converted between chapters, and this Motion is the first request by any party for conversion.

## IV.
## THE PROPOSED PLAN UPON CONVERSION

20. Debtor does not seek conversion in the abstract. Upon conversion, Debtor is prepared promptly to file the Plan with the following material components:

21. **Treatment of claims.** The Plan will provide for payment in full, in cash, of all allowed administrative expenses of both the Chapter 7 and Chapter 11 phases of this case, including the Trustee's statutory commission and the allowed fees and expenses of the Trustee's professionals, and of all allowed priority claims, as Sections 507 and 1129(a)(9) require. Each holder of an allowed general unsecured claim will be offered a cash distribution equal to ***one-hundred percent (100%) of its allowed claim***, payable on or promptly after the effective date of the Plan. As a result, there are no impaired creditors under the Plan.

22. **Preservation of the corporate entity.** The Plan preserves Debtor's corporate existence and organizational platform as a Texas financial services company, and Debtor's shareholders will retain their equity interests. Organizing and qualifying such a company involves formation, governance, and regulatory groundwork that need not be repeated if the existing entity is preserved. The Plan therefore keeps that platform available should the reorganized Debtor's shareholders elect to pursue future business opportunities in financial services, subject to all required regulatory approvals.

23. **The DIP Facility.** Subject to the approval of this Court after conversion pursuant to Section 364, Debtor has arranged a $2,000,000 debtor-in-possession credit facility to be provided by the

Shareholders or an affiliate of the Shareholders. Proceeds of the DIP Facility will be available to fund accrued Chapter 7 administrative expenses, the administrative costs of the Chapter 11 case, and the distributions provided for under the Plan. Funding of Plan distributions will not depend on the outcome of any litigation or on any recovery by the estate. The insider affiliation of the DIP Facility will be fully disclosed in the papers seeking approval of the DIP Facility.

24. **Insider-affiliated claims stand behind outside creditors.** The scheduled claim of Blackstone Investments I, an entity affiliated with the Shareholders, agrees to be subordinated so that it receives no distribution unless and until all non-insider allowed claims have received the distributions provided for them under the Plan.

25. **The Adversary Proceeding.** The Plan will provide for the resolution and dismissal of the Adversary Proceeding upon the effective date and full funding of the Plan distributions. The defendants have answered and deny liability, and the matter is being litigated under a scheduling order. The Plan will fully pay all creditors and resolve the live dispute.

26. **Prompt process.** Given the size of the claims pool and the absence of business operations, Debtor anticipates filing the Plan and a disclosure statement promptly upon conversion, soliciting votes in accordance with Sections 1125 and 1126, and seeking confirmation on the first timeline consistent with the notice requirements of the Bankruptcy Code and Rules.

## V.
## BASIS FOR CONVERSION

27. Section 706(a) of the Bankruptcy Code provides:

> The debtor may convert a case under this chapter to a case under chapter 11, 12, or 13 of this title at any time, if the case has not been converted under section 1112, 1208, or 1307 of this title. Any waiver of the right to convert a case under this subsection is unenforceable.

28. Congress described Section 706(a) as conferring a "one-time absolute right of conversion of a liquidation case to a reorganization." S. Rep. No. 95-989, at 94 (1978); H.R. Rep. No. 95-595,

at 380 (1977). The only textual qualifications on that right are those found in the statute itself: (1) the case must not previously have been converted, and (2) the debtor must be eligible to "be a debtor under such chapter." 11 U.S.C. § 706(a), (d).

29. Nothing in Section 706 imposes a creditor-support threshold, a going-concern requirement, or a best-interests test.

**A. Debtor Bears and Satisfies the Initial Burden**

30. Courts articulate the movant's *prima facie* case for conversion under Section 706(a) as requiring a showing that: (1) no prior conversion of the case has occurred; (2) the debtor qualifies to be a debtor under Chapter 11 pursuant to Section 109; (3) conversion is sought to achieve a purpose permitted under Chapter 11; and (4) upon conversion, the case would not immediately be subject to reconversion or dismissal for cause under Section 1112(b). In re United Furniture Indus., Inc., No. 22-13422-SDM, 2023 WL 1081256, at *10 (Bankr. N.D. Miss. Jan. 27, 2023). Once the movant makes that showing, the burden shifts to any objecting party to demonstrate by a preponderance of the evidence that the debtor is not eligible for conversion. *Id.*

**(1) No Prior Conversion Has Occurred**

31. This case was filed voluntarily as a Chapter 7 case and has never been converted under Section 1112, 1208, or 1307. The docket reflects no prior conversion, and no party has previously sought conversion. This element is satisfied.

**(2) Debtor Is Qualified to Be a Chapter 11 Debtor**

32. Section 109(d) provides that any person that may be a debtor under Chapter 7, other than certain entities not relevant here, may be a debtor under Chapter 11.

33. Debtor is a Texas corporation and a "person" within the meaning of Section 101(41). It is eligible for Chapter 7 relief (as its pending Chapter 7 case demonstrates) and is therefore eligible for Chapter 11 relief.

34. There is no requirement that a Chapter 11 debtor be engaged in ongoing business operations. *Toibb v. Radloff*, 501 U.S. 157, 163 (1991). This element is satisfied.

**(3) <u>Conversion Achieves Purposes Permitted Under Chapter 11: A Funded Distribution to Creditors and Reorganization of the Entity</u>**

35. Chapter 11 exists to maximize the value delivered to creditors, whether through reorganization or through an orderly liquidating or distributing plan. While a going-concern reorganization is not a prerequisite, as stated above, the Plan keeps the financial services platform available should the reorganized Debtor's shareholders elect to pursue future business opportunities in financial services. *Toibb*, 501 U.S. at 163-64; *see In re Texas Extrusion Corp.*, 844 F.2d 1142, 1161 (5th Cir. 1988) (conversion analysis considers what "most inure[s] to the benefit of all parties in interest").

36. The purpose of this conversion is concrete: to place before creditors a funded offer of a certain, prompt cash recovery and to let creditors decide by vote whether they prefer it to the estate's current path.

37. Non-insider creditors of this estate hold approximately $1.276 million in claims against an estate whose only scheduled asset is $203.00 in cash. The Plan substitutes an immediate funded distribution, payable promptly after the effective date. And unlike a pure liquidation, the Plan reorganizes: the Debtor emerges as an organized corporate vehicle, whose preservation costs creditors nothing.

**(4) <u>No Cause Exists for Immediate Reconversion Under Section 1112(b)</u>**

38. The final element asks whether, upon conversion, the case would immediately be subject to reconversion or dismissal for cause under Section 1112(b). Courts that have denied conversion on this "futility" ground have done so only where conditions existing as of the date of conversion made confirmation of any plan effectively impossible, such as where the estate had no funds and no committed source of funds with which to administer a Chapter 11 case at all. *See Daughtrey v. Rivera (In re Daughtrey)*, 896 F.3d 1255, 1278-79 (11th Cir. 2018); *In re NLG, LLC*, No. 21-11269, 2023 WL 2053920, at *7-10 (Bankr. D. Del. Feb. 16, 2023).

39. No such conditions exist here, because the DIP Facility eliminates them. There is no "substantial or continuing loss to or diminution of the estate" within the meaning of Section 1112(b)(4)(A). The estate has no operations generating losses, and the administrative expenses of both chapters will be funded. Nor is there an "inability to effectuate substantial consummation of a confirmed plan" within the meaning of Section 1112(b)(4)(M). Consummation of the Plan is a funded cash distribution. A funded plan process with a concrete offer before creditors is the opposite of futility.

40. Nor could the timing of this Motion supply cause. Section 706(a) permits conversion "at any time," and Section 706(b) confirms that conversion to Chapter 11 may be ordered "at any time" on request of any party in interest. The circumstances of this estate have changed materially. The commencement of the Adversary Proceeding in March 2026 crystallized both the cost and the delay inherent in the estate's litigation path, and the Shareholders have responded by arranging the DIP Facility so that creditors may be offered a prompt, certain cash recovery without further litigation. A conversion motion that follows from changed circumstances and puts a funded offer before creditors is the ordinary and intended operation of Section 706, not an abuse of it.

### B. <u>There is No Allegation or Support a Finding of Bad Faith</u>

41. In the context of a conversion from Chapter 7 to Chapter 13, the United States Supreme Court has recognized a narrow exception to Section 706(a) for the "atypical" and "extraordinary" case of demonstrated debtor bad faith, such as fraudulent concealment of assets.[1]

42. Nothing of the kind is present. Debtor filed this case voluntarily, with complete schedules, and has made no effort to conceal anything. The Distributions at issue in the Adversary Proceeding were disclosed. The Distributions themselves predate this bankruptcy case by more than fifteen months and predate this Motion by more than three years. They are allegations to be tried, not adjudicated facts, and they are conduct of the Shareholders in their personal capacities, not conduct of Debtor in this bankruptcy case.

## VI.
## <u>CONCLUSION</u>

This case presents the conversion scenario Section 706(a) was designed to effectuate. A first request, by an eligible debtor, to move from a liquidation posture (in which creditors wait on contested litigation) to a funded plan process (in which creditors are offered a certain, prompt cash recovery and decide its acceptance by vote). Each element of Debtor's *prima facie* case is satisfied, no cause for immediate reconversion exists, and no fact of record could support a bad-faith finding against the Debtor with respect to this request.

## VII.
## <u>REQUEST FOR RELIEF</u>

WHEREFORE, PREMISES CONSIDERED, Debtor respectfully requests that the Court convert this bankruptcy case to a case under Chapter 11 of the Bankruptcy Code pursuant to

---

[1] *Marrama v. Citizens Bank of Massachusetts*, 549 U.S. 365, 374-75 & n.11 (2007).

Section 706(a), and granting Debtor such other and further relief as the Court may deem just and proper.

August 7, 2026

Respectfully submitted,

**CRAWFORD, WISHNEW & LANG PLLC**

/s/ *Trey Crawford*
Trey Crawford
SBN 24059623
tcrawford@cwl.law
Michael J. Lang
SBN 24036944
mlang@cwl.law
Alexandra Ohlinger
SBN 24091423
aohlinger@cwl.law

1700 Pacific Avenue, Suite 2390
Dallas, Texas 75201
Telephone: (214) 817-4500
Fascimile: (214) 602-6551
COUNSEL FOR THE DEBTOR

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing Motion has been served by the Court's ECF e-filing notification on all parties receiving such notices on August 7, 2026, as reflected below, and to those on the Service List appended to this Motion.

Office of the United States Trustee 615 E. Houston St., Suite 533 San Antonio, TX 78295-1601

John Patrick Lowe, Chapter 7 Trustee 2402 East Main Street Uvalde, TX 78801

Brian T. Cumings
GRAVES, DOUGHERTY, HEARON & MOODY, P.C. 401 Congress Avenue, Suite 2700 Austin, TX 78701

*/s/Michael J. Lang*
Michael J. Lang

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| **IN RE:** | § | |
| | § | Case No. 24-50359-cag |
| **ANIMO BANCORP, INC.,** | § | |
| | § | Chapter 7 |
| **DEBTOR.** | § | |

**Order Granting Debtor's Motion to Convert Bankruptcy Case to Chapter 11 Pursuant to Section 706(a) of the Bankruptcy Code**

CAME ON FOR CONSIDERATION the Motion to Convert Bankruptcy Case to Chapter 11 Pursuant to Section 706(a) of the Bankruptcy Code (the "*Motion*") filed by Animo Bancorp, Inc., the debtor in the above-captioned case (the "*Debtor*"). The Court, having reviewed the Motion and any responses thereto, and having determined that notice of the Motion was proper and that the relief requested is warranted, finds that the Motion should be **GRANTED**.

IT IS THEREFORE ORDERED that the Motion is **GRANTED**.

IT IS FURTHER ORDERED that this bankruptcy case is converted to a case under Chapter 11 of the Bankruptcy Code pursuant to 11 U.S.C. § 706(a), effective as of the date of entry of this Order.

IT IS FURTHER ORDERED that this Court retains jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

**# # # END OF ORDER # # #**

Order submitted by:

By: *<u>/s/ Michael J. Lang</u>*
Trey Crawford
SBN 24059623
tcrawford@cwl.law
Michael J. Lang
SBN 24036944
mlang@cwl.law
Alexandra Ohlinger
SBN 24091423
aohlinger@cwl.law

Crawford Wishnew & Lang, PLLC
1700 Pacific Ave., Suite 2390
Dallas, Texas 75201
Telephone: (214) 817-4500

Label Matrix for local noticing
0542-5
Case 24-50359-alt
Western District of Texas
San Antonio
Wed Aug 5 15:47:44 CDT 2026

Animo Bancorp, Inc.
10777 Strait Lane
Dallas, TX 75229-5428

U.S. BANKRUPTCY COURT
615 E. HOUSTON STREET, ROOM 597
SAN ANTONIO, TX 78205-2055

(p)LINEBARGER GOGGAN BLAIR & SAMPSON LLP
ATTN DON STECKER
112 E PECAN
SUITE 2200
SAN ANTONIO TX 78205-1588

Birmingham Financial Center, LLC
505 N 20th Street
Suite 1000
Birmingham, AL 35203-4626

Blackstone Invesments I
P. O. Box 863376
Plano, TX 75086-3376

Comptroller of Public Accounts
C/O Office of the Attorney General
Bankruptcy - Collections Division MC-008
PO Box 12548
Austin TX 78711-2548

Dallas County
Linebarger Goggan Blair & Sampson, LLP
c/o Sherrel K. Knighton
2777 N. Stemmons Frwy Ste 1000
Dallas, Texas 75207-2328

Daniel Realty Services
505 20th Street North
Suite 1000
Birmingham, AL 35203-4626

David A. Felice, Esq.
Bailey & Glasser, LLP
2961 Centerville Rd., Ste. 302
Wilmington, DE 19808-1663

Michael B. Hess
Akerman, LLP
2001 Ross Avenue
Suite 3600
Dallas, TX 75201-2938

Personetics Technologies, Inc.
4 Ariel Sharon
Giv'atayim Israel 53200

Predicitve Analytics Group, Inc.
c/o Bailey & Glasser, LLP
2961 Centerville Road, Suite 302
Wilmington, DE 19808-1663

Predictive Analytics Group, Inc.
David A. Felice, Esq.
Bailey & Glasser, LLP
2961 Centerville Rd., Ste. 302
Wilmington, DE 19808-1663

State of New Jersey
Department of the Treasury
c/o Pioneer Credit recovery
P. O. Box 1009
Moorestown, NJ 08057-0909

State of New Jersey Division of Taxation
PO Box 245
Trenton, NJ 08602-0245

State of Tennessee
Department of Revenue
500 Deaderick Street
Nashville, TN 37242-0002

TN Dept of Revenue
c/o TN Attorney General's Office
Bankruptcy Division
PO Box 20207
Nashville, Tennessee 37202-4015

Tennessee Department of Revenue
c/o Attorney General
PO Box 20207
Nasville, TN 37202-4015

The Capital Markets Company LLC
c/o Michael B Hess
Akerman LLP
2001 Ross Ave., Ste 3600
Dallas, TX 75201-2938

The Capital Markets Company, LLC
3131 McKinney Ave., Suite 175
Dallas, TX 75204-7426

The Capital Markets Company, LLC
c/o David W Parham
Akerman LLP
2001 Ross Ave., Suite 3600
Dallas, TX 75201-2938

United States Department of Justice
United States Attorney
601 N.W. Loop 410, Suite 600
San Antonio, TX 78216-5597

United States Trustee
903 San Jacinto, Suite 230
Austin, TX 78701-2450

United States Trustee - SA12
US Trustee's Office
615 E Houston, Suite 533
San Antonio, TX 78205-2055

Douglas J. Powell
Law Offices of Douglas J. Powell
PO Box 340686
Lakeway, TX 78734-0012

John Patrick Lowe
2402 East Main Street
Uvalde, TX 78801-4943

The preferred mailing address (p) above has been substituted for the following entity/entities as so specified by said entity/entities in a Notice of Address filed pursuant to 11 U.S.C. 342(f) and Fed.R.Bank.P. 2002 (g)(4).

Bexar County
c/o Don Stecker
112 E. Pecan Street, Suite 2200
San Antonio, TX 78205

The following recipients may be/have been bypassed for notice due to an undeliverable (u) or duplicate (d) address.

(d)The Capital Markets Company, LLC
c/o Michael B Hess
Akerman LLP
2001 Ross Avenue, Ste 3600
Dallas, TX 75201-2938

| | |
|---|---|
| End of Label Matrix | |
| Mailable recipients | 26 |
| Bypassed recipients | 1 |
| Total | 27 |